IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Christine M. Arguello

Civil Action No. 22-cv-01082-CMA-KLM

ANA NORIEGA,

    Plaintiff,

v.

MARILLAC CLINIC, INC., and
SISTERS OF CHARITY OF LEAVENWORTH HEALTH SYSTEMS, INC., *d/b/a* SCL Health

    Defendant.

---

## ORDER GRANTING DEFENDANT SISTERS OF CHARITY OF LEAVENWORTH HEALTH SYSTEMS, INC.'S MOTION TO DISMISS

---

This matter is before the Court on Defendant Sisters of Charity of Leavenworth Health Systems, Inc.'s ("SCL Health") Motion to Dismiss. (Doc. # 36.)[1] For the following reasons, the Motion is granted.

### I.    BACKGROUND

The following facts are taken from Plaintiff's Third Amended Complaint (Doc. # 79) and are assumed to be true for purposes of reviewing the Motion to Dismiss under

---

[1] On December 15, 2022, Magistrate Judge Kristen L. Mix granted Plaintiff Ana Noriega's Motion for Leave to Amend Her Second Amended Complaint. (Doc. # 78.) Pursuant to the parties' agreement, Judge Mix further ordered that the previously filed motion-to-dismiss briefing (Docs. ## 36, 49, 54) be deemed directed at the Third Amended Complaint, given that the amendment solely concerned substitution of the correct defendant in the case. (Doc. # 78.) The Second Amended Complaint named Co-Defendant as "SCL Health-Front Range, Inc., d/b/a SCL Health." (Doc. # 16.) The Third Amended complaint substitutes "Sisters of Charity of Leavenworth Health Systems, Inc., d/b/a SCL Health." (Doc. # 79.)

Fed. R. Civ. P. 12(b)(6). *See Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). The Court also draws facts from the documents attached to the Complaint.[2] Fed. R. Civ. P. 10(c); *Hall v. Bellmon*, 935 F.2d 1106, 1112 (10th Cir. 1991) ("A written document that is attached to the complaint as an exhibit is considered part of the complaint and may be considered in a Rule 12(b)(6) dismissal."). Finally, the Court considers documents attached to SCL Health's Motion (Docs. ## 36-2 and 36-3) because they are "referred to in the [Third Amended] complaint . . . are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *See* (Doc. # 79 at ¶¶ 9-10); *Toone v. Wells Fargo Bank, N.A.*, 716 F.3d 516, 521 (10th Cir. 2013) (internal quotation marks and citation omitted).

    This is an employment discrimination, harassment, and retaliation case. Plaintiff Ana Noriega is a Hispanic female with dark skin. (Doc. # 79 at ¶ 1.) Ms. Noriega worked at Defendant Marillac Clinic's principal place of business from approximately March 2020, until her termination on December 21, 2020. (*Id.* At ¶¶ 22, 31.) Ms. Noriega alleges that Defendants Marillac Clinic and SCL Health jointly employed her during this period. (*Id.* At ¶ 8.) During the period of Ms. Noriega's employment, SCL Health was responsible for various human resources functions and responsibilities as it related to

---

[2] Because amendment of the Second Amended Complaint solely concerned substitution of the correct defendant, *see* (Doc. # 78), and Ms. Noriega incorporates documents attached to her Second Amended Complaint (Docs. ## 33-2 and 33-3) in her Third Amended Complaint, the Court deems these documents to be attached to the Third Amended Complaint.

2

individuals working at Marillac Clinic, including Ms. Noriega. (*Id.* at ¶¶ 11a–17.)[3] These included:

- "formulating, establishing, overseeing, and implementing detailed personnel policies . . . and training [Marillac Clinic staff] in those policies (*id.* at ¶ 11a);

- "overseeing and/or otherwise receiving, investigating, and responding to discrimination, harassment, and/or retaliation reports concerning, and/or had the power to discipline that it exercised, noncompliant Marillac staff" (*id.* at ¶ 10a);

- "jointly shar[ing] and coordinat[ing with Marillac] over the terms, conditions and privileges involving the employment of . . . Marillac staff, including training them on and requiring them to comply with their job duties and responsibilities and Marillac and SCL Health's policies and regulations" (*id.* at ¶ 11b);

- exercising "supervision, direction, and control over the work performed by Marillac staff and day-to-day employment decisions by and for Marillac" (*id.* at ¶ 12);

- "monitor[ing] the working hours and overtime performed by Marillac staff in their daily work activities and administer[ing] their compensation and benefits" (*id.* at ¶ 13); and

- "ma[king] or jointly with Marillac ma[king] final hiring, termination, disciplinary, promotion, and compensation decision affecting Marillac staff" (*id.* at ¶ 15).

---

[3] The Third Amended Complaint contains two paragraphs numbered 10 and two paragraphs numbered 11. (Doc. # 79 at 4.) The court will refer to the first paragraphs as 10a and 11a and the second paragraphs as 10b and 11b.

Ms. Noriega received two forms during her employment which documented the relationship between Marillac Clinic and SCL Health. One of these was titled "Recruitment, Recognition & Retention Plan" that states "Marillac's partnership with . . . SCL Health (SCLH) ensures comprehensive and compliant human resources practices," and provides a list of the "full spectrum of HR services" SCL Health managed for Marillac Clinic. (*Id.* at ¶ 9); *see also* (Doc. # 36-2.) During her employment Ms. Noriega also received a job description on SCL Health letterhead that listed "[u]nderstand and adhere to SCL Health compliance standards as they appear in the **SCL Health Corporate Compliance Policy**" and "[k]eep abreast of all pertinent . . . SCL Health regulations" as two of Ms. Noriega's "Corporate Compliance Responsibilities." (Doc. # 79 at ¶ 10); *see also* (Doc. # 36-3.)

Ms. Noriega alleges that because of her race, color, and/or national origin, she was not paid the same rate as white employees with the same or similar job descriptions. (Doc. # 79 at ¶ 28.) Ms. Noriega further alleges that because of her race, color, and/or national origin, upper management refused to communicate with her, instead communicating solely with her white colleague. (*Id.* at ¶¶ 23–24, 27.) Ms. Noriega was also instructed not to communicate with persons essential to her job duties. (*Id.* at ¶ 26.) On or about December 1, 2020, Ms. Noriega reported this conduct and her belief of its discriminatory animus to Human Resources Supervisor Kirstin Guptill. (*Id.* at ¶ 25.) Supervisor Guptill signed a written reprimand of Ms. Noriega on December 17, 2020, which Ms. Noriega alleges was an act of discrimination, harassment, and retaliation. (*Id.* at ¶ 29.) In a written complaint to Supervisor Guptill,

4

Ms. Noriega asserted her belief that the reprimand and previously reported conduct was on account of her Hispanic identity. (*Id.* at ¶ 30.) Ms. Noriega's employment was terminated on or about December 21, 2020. (*Id.* at ¶ 31.)

On or about March 17, 2021, Ms. Noriega filed charges for discrimination, harassment, and retaliation with the Equal Employment Opportunity Commission ("EEOC")/Colorado Civil Rights Division ("CCRD"). (*Id.* at ¶ 31); *see also* (Doc. # 33-2.) The charging documents name only Marillac Clinic as Ms. Noriega's employer although the email address Ms. Noriega provided is "kay.ramachandran@sclhealth.org" (Doc. # 33-2 at 7.) The EEOC issued Ms. Noriega a right-to-sue letter on February 2, 2022. (Doc. # 79 at ¶ 38); *see also* (Doc. # 33-3.) Ms. Noriega initiated this matter in federal court on May 2, 2022. (Doc. # 1.)

Ms. Noriega is suing both Marillac Clinic and SCL Health under Title VII of the Civil Rights Act of 1964 alleging workplace discrimination, harassment, and retaliation on the basis of race, color, and/or national origin. (Doc. # 79.) SCL Health now moves to dismiss all of Ms. Noriega's claims against it (Doc. # 36.)

## II.     LEGAL STANDARDS

Under Rule 12(b)(6), the Court may dismiss a complaint for failure to state a claim if it appears beyond a doubt that the plaintiff can plead no set of facts in support of her claim that entitle her to relief. *Golan v. Ashcroft*, 310 F. Supp. 2d 1215, 1217 (D. Colo. 2004). Dismissal under Rule 12(b)(6) may also be based on the lack of a cognizable legal theory. *Id.* In reviewing a motion to dismiss, courts take all well-pleaded allegations in the plaintiff's complaint as true and construe the allegations in the light

most favorable to the plaintiff. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012). The court's role in a Rule 12(b)(6) motion "is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Peterson v. Grisham*, 594 F.3d 723, 727 (10th Cir. 2010) (quoting *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991)).

However, a litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall*, 935 F.2d at 1110. A court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged. *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). A plaintiff's claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### III.   DISCUSSION

SCL Health makes three arguments for dismissal of Ms. Noriega's claims against them. First, SCL Health asserts the affirmative defense that Ms. Noriega failed to exhaust her administrative remedies against them because she only named Marillac Clinic in her EEOC/CCRD charge. (Doc. # 36 at 1, 4–9.) Second, SCL Health argues that Ms. Noriega's claims against them must be dismissed because she has not sufficiently pleaded that SCL Health, along with Marillac Clinic, was her joint employer. (*Id.* at 2, 10–13.) Finally, SCL Health argues that Ms. Noriega's hostile work

environment claim (Count IV) must be dismissed because Ms. Noriega has not sufficiently pled the alleged harassment she experienced was severe or pervasive. (*Id.* at 2, 13–15.)

As an initial matter the Court notes that Ms. Noriega's hostile work environment claim is against Marilla Clinic only.[4] (Doc. # 79 at 11.) Therefore, the Court does not address SCL Health's arguments related to that count. Further, the Court declines to address SCL Health's exhaustion argument because, even presuming for the sake of this Motion that Ms. Noriega administratively exhausted her claims against SCL Health, the Court concludes that Ms. Noriega has not sufficiently pleaded that SCL Health was her joint employer. Therefore, the claims against SCL Health must be dismissed.

**A.    JOINT EMPLOYMENT**

1. Applicable Law

Independent entities may be held liable as "joint employers" under Title VII if they "co-determine the essential terms and conditions of employment." *Bristol v. Bd. Of Cnty. Cmm'rs*, 312 F.3d 1213, 1218 (10th Cir. 2002). "In other words, courts look to whether both entities 'exercise significant control over the same employees.'" *Id.* (quoting *Graves v. Lowery*, 117 F.3d 723, 727 (3d Cir. 1997)). The most important factor in determining if an employment relationship existed is whether an alleged employer had the right to fire the employee. *Id.* at 1219. Additional relevant factors include: "the ability to 'promulgate work rules and assignments, and set conditions of employment, including

---

[4] This count applied to both Defendants in the Second Amended Complaint. *See* (Doc. # 16 at 7–9.)

compensation, benefits, and hours; . . . day-to-day supervision of employees, including employee discipline; and . . . control of employee records, including payroll, insurance, taxes and the like.'" *Knitter v. Corvias Military Living, LLC*, 758 F.3d 1214, 1226 (10th Cir. 2014) (quoting *Butterbaugh v. Chertoff*, 479 F. Supp. 2d 485, 491 (W.D. Pa. 2007)).

2. Analysis

SCL Health argues that Ms. Noriega has failed to plausibly plead factual allegations demonstrating SCL Health jointly employed her because she "makes only conclusory statements that outline the legal elements of a joint employer relationship." (Doc. # 36 at 10–13.) In response, Ms. Noriega argues that SCL Health's arguments are premised on the wrong standard of review and that she has made sufficient factual allegations, which must be taken as true at this stage in the litigation, to warrant discovery on the level of control SCL Health exercised over her employment. (Doc. # 49 at 11–13.)

First, the Court acknowledges that some of the cases cited by SCL Health in their Motion, and by the Court in this section, arose outside the context of a motion to dismiss. *See, e.g.*, *Knitter*, 758 F.3d at 1218. However, the Court may, and in the case of binding precedent must, consider the elements of the joint employer test discussed in these cases so long as the Court then weighs the pertinent allegations in the instant case according to the appropriate standard of review.

The Court agrees that Ms. Noriega has failed to plausibly allege non-conclusory facts demonstrating that SCL Health employed her. *See Kazazian v. Vail Resorts, Inc.*, No. 18-cv-00197-MEH, 2018 WL 2445832, at *6 (D. Colo. May 31, 2018) (citing *L'Ggrke*

8

*v. Asset Plus Corp.*, No. 12-cv-596-JED-TLW, 2013 WL 3973330, at * 5 (D. Okla. July 31, 2013) for the proposition that "[a] plaintiff is required to plead facts which demonstrate the existence of a joint employment relationship based upon the totality of the working relationship between the parties alleged to be joint employers."). Ms. Noriega alleges that SCL Health provided human resources services to Marillac Clinic including training Marillac Staff in personnel policies. (Doc. # 79 at ¶¶ 11a–17.) However, Ms. Noriega does not claim she personally was trained by anyone from SCL Health. (Doc. # 79 at ¶¶ 11a, 11b.) In fact, Ms. Noriega never claims to have met, communicated, or engaged with anyone from SCL Health directly. *See generally* (Doc. # 79.)

Ms. Noriega also alleges SCL Health and Marillac Clinic jointly terminated her. (*Id.* at ¶ 54.) However, Ms. Noriega has not alleged any factual details—such as which individuals engaged in which actions—regarding SCL Health's role in her termination. *Contra Solis v. Circle Group, LLC*, No. 16-cv-01329-RBJ, 2017 WL 1246487, at *2 (D. Colo. Apr. 5, 2017) (finding plaintiffs has established a joint employer relationship where they alleged specific employees of each company hired, fired, and supervised them). Ms. Noriega alleges she reported discriminatory, harassing, and retaliatory conduct to a Human Resources Supervisor, Kristin Guptill, and that Supervisor Guptill signed a written reprimand issued to Ms. Noriega. (Doc. # 79 at ¶¶ 25, 29–30.) However, Ms. Noriega does not allege, and it is not apparent from the complaint or other documents submitted by Plaintiff, that Supervisor Guptill was an employee or representative of SCL

Health. *See Knitter*, 758 F.3d at 1226 (listing the ability to discipline employees as one factor in determining if a joint employer relationship existed).

Overall, Ms. Noriega's thin allegations do not plausibly demonstrate that SCL Health directed or controlled Ms. Noriega or other employees at Marillac Clinic such that SCL Health could be considered their joint employer.[5] *See A.V. through Hanson v. Douglas Cnt'y School Dist. RE-1*, 586 F. Supp. 3d 1053, 1073 (D. Colo. 2022).

The two documents Ms. Noriega received during her employment which reference SCL Health do not require an alternate conclusion. The "Recruitment, Recognition & Retention Plan" states "Marillac has established its own positions, pay grades and pay ranges [and] exercises complete control over salary determination." (Doc. # 36-2 at 2.) *See Knitter*, 758 F.3d at 1226 (listing "set[ting] conditions of employment, including compensation" as another factor in determining who a party's employer was). Although it also references SCL Health's role in managing some aspects of employment at Marillac Clinic including benefits, payroll, and performance reviews—this is insufficient to demonstrate SCL Health directed or controlled Ms. Noriega or her colleagues. (Doc. # 36-2 at 2); *Knitter*, 758 F.3d at 1226.

The second form, a job description on SCL Health letterhead listing "[u]nderstand and adhere to SCL Health compliance standards as they appear in the SCL Health

---

[5] In her Response Ms. Noriega also briefly notes that, at least one Circuit has held that a defendant not named in an EEOC charge may be included in a civil action where the named respondent acted as an "agent" of the unnamed defendant. (Doc. # 49 at 10–11.) However, Ms. Noriega concedes this theory "may not be relevant in this matter" and neither party has sufficiently brief it. (*Id.* at 11); *see also generally* (Doc. # 54.) Therefore, the Court declines to address this argument.

Corporate Compliance Policy" and "[k]eep abreast of all pertinent . . . SCL Health regulations" as two of Ms. Noriega's "Corporate Compliance Responsibilities," similarly fails to demonstrate SCL Health played any significant role in Ms. Noriega's employment. (Doc. # 79 at ¶ 10); *see also* (Doc. # 36-3); *Knitter*, 758 F.3d at 1226.

Accordingly, the Court concludes that Ms. Noriega has failed to plausibly allege non-conclusory facts demonstrating that SCL Health jointly employed her such that it may be held liable under Title VII on a joint employment theory. The Court therefore grants SCL Health's Motion to Dismiss and dismisses all claims against it without prejudice.

## IV.   CONCLUSION

For the foregoing reasons, Defendant Sisters of Charity of Leavenworth Health Systems, Inc.'s Motion to Dismiss (Doc. # 36) is GRANTED. It is

FURTHER ORDERED that all Plaintiff Ana Noriega's claims asserted against Defendant Sisters of Charity of Leavenworth Health Systems, Inc. are DISMISSED WITHOUT PREJUDICE. It is

FURTHER ORDERED that should Ms. Noriega wish to amend her complaint, she shall file a motion for leave to amend together with a proposed amended complaint curing the deficiencies identified in this Order on or before March 3, 2023, otherwise all claims against Defendant Sisters of Charity of Leavenworth Health Systems, Inc. will be dismissed with prejudice.

DATED: February 3, 2023.

BY THE COURT:

CHRISTINE M. ARGUELLO
Senior United States District Judge